United States District Court
Southern District of Texas

**ENTERED**

July 29, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MELINDA A. WARFIELD,              §
                                  §
          Plaintiff,              §
                                  §
v.                                §     CIVIL ACTION NO. H-18-2474
                                  §
ANDREW SAUL,[1]                   §
COMMISSIONER OF THE               §
SOCIAL SECURITY ADMINISTRATION,   §
                                  §
          Defendant.              §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[2] are Plaintiff's Motion for Summary Judgment (Doc. 9) and Defendant's Cross-Motion for Summary Judgment (Doc. 10). The court has considered the motions, Defendant's response, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under

---

[1]    Carolyn Colvin was the Acting Commissioner of the Social Security Administration ("SSA") at the time that Plaintiff filed this case but no longer holds that position. Andrew Saul is now Commissioner of the SSA and, as such, is automatically substituted as the defendant in this case. <u>See</u> 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 7, Ord. Dated Oct. 17, 2018.

Title II of the Social Security Act ("the Act").[3]

## A.  <u>Vocational and Medical History</u>

Plaintiff was born on July 2, 1956, and was fifty-two years old on the alleged disability onset date of June 20, 2009.[4] Plaintiff completed four or more years of college and worked in the profession of nursing from 1998-2009.[5]

In June 2009, Plaintiff sought treatment for a back impairment, complaining of pain between her shoulder blades, pain in the left hip, and numbness and burning in both legs.[6] Vivian Habib, M.D., ("Dr. Habib") ordered physical therapy, adjusted pain medications, and provided a work release.[7] After approximately five weeks of physical therapy,[8] Plaintiff reported that she felt better but was still experiencing severe lower back pain and slight shoulder pain, as well as tingling and numbness on the back of both legs.[9]

At an appointment in September 2009, Plaintiff reported that

---

[3]     Plaintiff also filed an application for supplemental security income under Title XVI of the Act.  <u>See</u> Doc. 6, Tr. of the Admin. Proceedings ("Tr.") 166-69.  The record does not contain any determination on that claim, and the reconsideration determination indicated that Plaintiff did not complete all necessary forms to pursue supplemental security income.  <u>See</u> Tr. 72.

[4]     <u>See</u> Tr. 156.

[5]     <u>See</u> Tr. 186-87.

[6]     <u>See</u> Tr. 293.

[7]     <u>See</u> Tr. 294-95.

[8]     The treatment notes for physical therapy are not in the record.

[9]     <u>See</u> Tr. 297.

her upper back pain had almost completely resolved but that her lower back pain, which radiated down her right leg, had not improved.[10]  While noting that the back pain was improving, the physician entered a work release for four additional weeks.[11] Plaintiff did not complain of medication side effects at any of these appointments.[12] As reflected in the medical record, Plaintiff did not attend any further treatment for her back impairment after September 2009.

During the alleged disability period, Plaintiff received medical treatment for a variety of other disorders, including hypertension, hypercholesterolemia, hypothyroidism, dermatological lesions, and trigger finger.[13]  Gastroesophageal reflux disease ("GERD") was listed as an additional diagnosis in a few of the treatment notes.[14]  Plaintiff underwent a series of cardiac tests in 2012.[15]  At these appointments, Plaintiff often did not mention back pain.[16]  At dermatology appointments in May 2011, September 2011, May 2012, and May 2013, Plaintiff denied experiencing

---

[10]     See Tr. 290.

[11]     See Tr. 291.

[12]     See Tr. 290-97.

[13]     See, e.g., Tr. 462-64, 466, 469-70, 472-73, 485-87, 489-96, 510-25, 540-42, 571-73, 578-89, 611-15.

[14]     See, e.g., Tr. 485.

[15]     See Tr. 472-83.

[16]     See, e.g., Tr. 489 (noting joint pain but not back pain); Tr. 492 (same); Tr. 547 (same); Tr. 550 (same).

fatigue.[17]   At a May 2011 appointment, two September 2011 appointments, and a May 2012 appointment, the dermatologist also noted no confusion and no concentration or memory difficulties.[18] At a December 2013 appointment to address trigger finger, Plaintiff reported no back pain, neck pain, muscle weakness, extremity weakness, numbness in extremities, fatigue, malaise, or memory impairment.[19]

On July 1, 2014, Balakrishna Reddy Mangapuram, M.D., ("Dr. Mangapuram") conducted a consultative examination at the request of the Social Security Administration.[20]  Magnetic resonance imaging ("MRI") performed in connection with that examination is the only back imaging from the alleged disability period.[21]  The MRI report stated, "There is mild left convex lumbar scoliosis.  Vertebral height and alignment are otherwise maintained, with no apparent acute fracture.  The bones appear demineralized.  There is degenerative disc height loss and facet arthropathy from L2-L3 to

---

[17]     See Tr. 510-11, 515, 518, 521, 524.

[18]     See Tr. 515, 519, 522, 524.

[19]     See Tr. 579.

[20]     See Tr. 592-96.

[21]     See Tr. 596.  The record also includes reports on MRIs performed prior to the alleged onset date.  See Tr. 370-71, 377-78.  A December 2005 MRI revealed "a . . . left foraminal disc protrusion causing severe stenosis of the left neural foramen and compromise of the exiting left L4 nerve root" and "a moderate broad-based disc bulge . . . abutting both the central descending S1 nerve roots."  Tr. 377.  A March 2008 showed mild bulging "without significant encroachment on the exiting nerve root" at L4-L5 and mild bulging without "significant central canal stenosis or neural foraminal narrowing" at L5-S1.  Tr. 370.

L5-S1, greater inferiorly."[22]

At the examination, Plaintiff reported a history of back pain since 2004, which she characterized as constant and measuring four on a ten-point pain scale.[23]  She further described the pain as radiating down her right leg with right buttock numbness.[24] She said that sitting, standing, walking, bending, or lifting any weight exacerbated the pain.[25]  In addition to back pain, Plaintiff complained of fatigue, pain in her arms and hands, and arthralgia.[26]

On examination, Dr. Mangapuram assessed spinal flexion of thirty degrees compared to norm of sixty degrees; spinal extension of twenty degrees compared to norm of twenty-five degrees; straight-leg raising on the left of ninety degrees (normal); and straight-leg raising on the right of forty degrees compared to the norm of ninety degrees.[27]  The treatment note did not indicate whether the straight-leg testing that Dr. Mangapuram performed was in a supine or sitting position but included only one set of results.  The doctor noted no evidence of back muscle atrophy and observed normal hip, shoulder, knee, elbow, wrist, hand, ankle, and

---

[22]     Id.

[23]     See Tr. 592.

[24]     See id.

[25]     See id.

[26]     See Tr. 593.

[27]     See Tr. 594.

foot movements on both sides.[28]  Plaintiff's neck movements were also normal.

On the ability to perform work activities, Dr. Mangapuram opined that Plaintiff could lift, carry, and handle objects weighing less than fifteen pounds; ambulate without an assistive device; perform toe and heel walking; perform half squats; reach, handle, finger, and feel normally; button clothes and pick up pencil normally.[29]  Plaintiff could not hop or perform tandem or straight walking due to back pain.[30]

## B.  **Application to SSA**

On July 28, 2013, Plaintiff applied for disability insurance benefits claiming an inability to work since June 20, 2009, due to right kidney nephrectomy, multiple herniated discs, spinal stenosis, spinal nerve root impingement, hypertension, GERD, hypothyroidism, and hypercholesterolemia.[31]  The relevant period for disability consideration was June 20, 2009, through Plaintiff's date last insured on December 31, 2014.[32]

In August 2013, Plaintiff completed a function report in which she stated that her medication caused drowsiness and occasionally

---

[28]     See id.

[29]     See id.

[30]     See id.

[31]     See Tr. 61-62, 70-71, 156-64, 185.

[32]     See Tr. 20, 22.

did not control pain adequately.[33]  She reported that, on certain days, only lying down lowered pain to a tolerable level.[34]  As daily activities, Plaintiff listed making meals, walking the dog twice per day, washing clothes, washing dishes, shopping, picking up grandchildren from school, and tending to herbs.[35]  As hobbies, Plaintiff listed reading, cross stitching, and perusing internet news.[36]  She also stated that she interacted with friends on a limited basis and that she attended church.[37]

On September 11, 2013, the Social Security Administration found Plaintiff not disabled at the initial level of review.[38]  The reviewing medical consultant considered whether Plaintiff met the requirements of any impairment described in the regulations as presumptively disabling ("Listing"),[39] specifically addressing Listing 4.04 for ischemic heart disease, but found that her heart condition did not meet or equal the criteria.[40]  He opined that Plaintiff was capable of occasionally lifting and/or carrying

---

[33]    See Tr. 210.

[34]    See id.

[35]    See Tr. 211-13.

[36]    See Tr. 214.

[37]    See id.

[38]    See Tr. 61-70.

[39]    See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[40]    See Tr. 66.

twenty pounds and frequently lifting and/or carrying ten pounds.[41]
He further opined that, with normal breaks, Plaintiff could stand
and/or walk or could sit for a total of six hours in an eight-hour
workday.[42]   No other limitations were noted.[43]   The medical
consultant's opinion was consistent with the ability to perform a
full range of light work.[44]

Plaintiff failed to appeal this determination within the
allotted sixty days.[45]   On January 14, 2014, Plaintiff's attorney
submitted a good-cause statement in support of the reopening of the
claim.[46]   In a function report completed on May 11, 2014, Plaintiff
repeated the same medication side effects, daily activities,
hobbies, and outings as reported in August 2013.[47]   The Social
Security Administration proceeded with reconsideration of the
initial decision, again finding Plaintiff not disabled.[48]   The
reviewing medical consultant agreed with the prior assessment as to
medically determinable impairments and severity.[49]

---

[41]     See id.

[42]     See Tr. 67.

[43]     See id.

[44]     See 20 C.F.R. § 404.1567(b).

[45]     See Tr. 88, 228-29.

[46]     See Tr. 228-30.

[47]     See Tr. 434-41.

[48]     See Tr. 71-83.

[49]     See Tr. 78-79.

On August 20, 2014, Plaintiff requested a hearing before an ALJ.[50]  On January 16, 2015, the ALJ granted Plaintiff's request and scheduled the hearing on April 23, 2015.[51]

### C.  **Hearing**

At the hearing, Plaintiff and a vocational expert testified.[52] Plaintiff stated that she quit working in June 2009 due to back pain that radiated down the back of her right leg and was not improving with "physical therapy or the traditional medication."[53]

She described her back pain as a seven or eight on a ten-point scale but indicated that it was "fairly well controlled" with medication that reduced it to a "tolerable" level.[54]  She also reported that walking alleviated the pain.[55]  When asked about side effects, Plaintiff responded that one of her medications made her drowsy, which caused a loss of concentration.[56]  Plaintiff explained, "Sometimes I have, you know, if I'm trying to maybe read, if I'm sitting or lying down, you know, I might read the same paragraph a couple of times and not really have good memory about

---

[50]  <u>See</u> Tr. 97-98.

[51]  <u>See</u> Tr. 110.

[52]  <u>See</u> Tr. 33-60.

[53]  Tr. 37-38.

[54]  Tr. 38-39.

[55]  <u>See</u> Tr. 39.

[56]  <u>See</u> Tr. 42.

what's happening with -- with the story I'm reading."[57]   She reported no problems keeping up with appointments or tasks and no confusion when engaged in those activities.[58]  She said that phone reminders aided her memory sharpness but admitted that she could not say whether the memory issues were due to medication or age.[59]

Plaintiff reported that she could not bend, stoop, or lift anything heavier than ten pounds.[60]  After five to ten minutes of standing, Plaintiff stated, she would experience pain going down the back of her leg and would need "to shift positions or walk or lie down."[61]  The same was true of sitting for five to ten minutes, according to Plaintiff.[62]  Plaintiff said that she was able to walk about one-half of a block before needing to stop briefly but that she regularly walked a total of up to one-half of a mile for exercise.[63]  Plaintiff stated that she did not utilize an assistive device to ambulate.[64]

Plaintiff stated that family members helped her with household chores such as vacuuming, sweeping, mopping, and cleaning toilets

---

[57]     Id.

[58]     See id.

[59]     See Tr. 42-43, 50.

[60]     See Tr. 39.

[61]     Tr. 40.

[62]     See Tr. 41.

[63]     See Tr. 41, 45.

[64]     See Tr. 51.

but that she was able to walk the dog, to prepare simple meals, to load the top rack of the dishwasher, to load the clothes washer, and to fold clothes.[65]  Plaintiff said that she was able to drive, to go to the grocery store with her husband, and to cross stitch.[66] She regularly attended church, but, she explained, she would get up to move around a couple of times during the course of the service.[67]

Plaintiff described her past work, including jobs as a nursing supervisor at a prison and at a dental facility, as a quality-assurance nurse at a mental-health facility, and an assistant director at a nursing home.[68] About the quality-assurance position, Plaintiff described her work as attending meetings, writing, reviewing and interpreting standards, educating staff, and preparing for recertification.[69]  The ALJ asked why Plaintiff had not looked for a "sit down job" where Plaintiff could utilize the skills she acquired in her past work.[70]  Plaintiff responded that she could not sit for long periods of time and that she was not sure she could review records due to medication side effects.[71] Plaintiff admitted that she did not feel confident that she could

---

[65]    See Tr. 39, 43-44.

[66]    See Tr. 44.

[67]    See id.

[68]    See Tr. 45-48.

[69]    See id.

[70]    See Tr. 49.

[71]    See Tr. 48-49.

do the work because she assessed her occupational skills as not being at the same level they had been previously.[72]

The ALJ asked Plaintiff's attorney for cites to the record indicating that Plaintiff had complained to her treatment providers about medication side effects.[73] The only instance that the attorney cited was Dr. Mangapuram's July 2014 consultative report noting that Plaintiff had self-reported drowsiness.[74]

The vocational expert testified after Plaintiff and classified all of Plaintiff's prior jobs as medium and skilled.[75] When pressed on what made Plaintiff's quality-assurance position as performed fit within the medium-exertion category, the vocational expert said that nursing jobs not in the insurance field were classified as medium.[76] Upon questioning about her duties in quality assurance, Plaintiff confirmed that she did not have to lift fifty pounds because she did not provide direct patient care, that she sat sixty percent of the time with occasional walking required within the factility.[77] The vocational expert changed her categorization of that position to sedentary and skilled as performed.[78] After

---

[72] See Tr. 49-50.

[73] See Tr. 50-51.

[74] See Tr. 51.

[75] See Tr. 52-53.

[76] See Tr. 53-54.

[77] See Tr. 54.

[78] See id.

12

discussion of Plaintiff's other jobs, the vocational expert found that they were performed at the medium level of exertion.[79]  The ALJ did not pose a hypothetical question.[80]

**D.   Commissioner's Decision**

On May 27, 2015, the ALJ issued an unfavorable decision.[81]  The ALJ found that Plaintiff had not engaged in substantial gainful activity from June 20, 2009, the alleged onset date, to December 31, 2014, the date last insured.[82]  The ALJ recognized the following impairments as severe:  degenerative disc disease and mild chronic heart failure.   However, he found open trigger decompression, hypertension, hypercholesterolemia, and hypothyroidism to be nonsevere.[83]  Additionally, the ALJ acknowledged Plaintiff's report that her judgment was cloudy but found no medically determinable impairment associated with that symptom.[84]

At the Listing step, the ALJ found that Plaintiff did not meet the requirements of any Listing specifically addressing Listing 1.04 for disorders of the spine.[85]  The ALJ discussed the records

---

[79]     See Tr. 54-55.

[80]     See Tr. 59.

[81]     See Tr. 17-27.

[82]     See Tr. 22.

[83]     See Tr. 23.

[84]     See id.

[85]     See Tr. 24.  The ALJ also determined that Plaintiff's cardiac issues did not meet Listing 4.02 for chronic heart failure.  See Tr. 24-25.

concerning treatment for back pain and concluded that her back impairment "d[id] not meet Listing 1.04 because she d[id] not have evidence of nerve root compression, consistent limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, or positive straight leg raising tests (in both sitting and supine positions)."[86]

The ALJ discussed the medical findings concerning Plaintiff's back impairments, as well as Dr. Mangapuram's July 2014 consultative report and the opinions of the medical consultants who reviewed Plaintiff's medical records at the initial and reconsideration levels.[87]  Because Dr. Mangapuram's opinions were based on an examination and objective findings in the medical record, they were given greater weight than the medical consultants' opinions.[88]

The ALJ also recounted Plaintiff's hearing testimony regarding her limitations and daily activities.[89]  Finding that Plaintiff's medically determinable impairments could be expected to cause her symptoms but that the medical record did not support the intensity, persistence, and limiting effects that Plaintiff represented, the

---

[86]    Tr. 24.

[87]    See Tr. 24, 26.

[88]    See Tr. 26

[89]    See Tr. 25.

ALJ gave little weight to Plaintiff's subjective allegations.[90]

Through the date last insured the ALJ found Plaintiff capable of a full range of sedentary work, assessing her ability to perform each exertional function of sedentary work.[91]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally . . . ."[92]  The ALJ noted that the medical records reflected only conservative treatment for Plaintiff's back impairment and included no mention of clouded judgment or sleepiness as medication side effects.[93]

Relying on the vocational expert's testimony that, as performed, Plaintiff's work as a quality-assurance nurse fit within the sedentary level of exertion, the ALJ found Plaintiff able to perform her past relevant work.[94]  Therefore, the ALJ found that Plaintiff was not disabled at any time from the alleged onset date to the date last insured.[95]

On June 8, 2015, Plaintiff appealed the ALJ's decision.[96]  On

---

[90]    See Tr. 25-26.

[91]    See Tr. 25.

[92]    20 C.F.R. § 404.1567(a).

[93]    See Tr. 26.

[94]    See Tr. 27.

[95]    See Tr. 20, 27.

[96]    See Tr. 8.

November 4, 2015, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[97]   After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[98]

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.   <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

## A.   <u>Legal Standard</u>

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.   <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by

---

[97]      <u>See</u> Tr. 11-15.

[98]      <u>See</u> Tr. 11-13; Doc. 1, Pl.'s Compl.

"medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

<u>Bowling v. Shalala</u>, 36 F.3d 431, 435 (5th Cir. 1994); <u>see also</u> 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. <u>Greenspan</u>, 38 F.3d at 236.

**B.**  **<u>Substantial Evidence</u>**

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Biestek v. Berryhill</u>, ____ U.S. ____, 139 S. Ct. 1148, 1154 (2019) (internal quotations marks omitted) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id.  It only requires "more than a mere scintilla." Id. (quoting Consol. Edison Co., 305 U.S. at 229).

The Commissioner has the responsibility of deciding any conflict in the evidence. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).   If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   See Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability insurance benefits.   Plaintiff asserts that the ALJ erred by:  (1) determining that Plaintiff's back impairment did not

18

meet the requirements of Listing 1.04(A); and (2) determining Plaintiff capable of a full range of sedentary work. Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

## A.  Listing 1.04(A) Determination

The Listings "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of her . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). If the requirements of any Listing are met or equaled by an individual's impairment, the individual is presumptively disabled. Whitehead v. Colvin, 820 F.3d 776, 780-81 (5th Cir. 2016); see also 20 C.F.R. §§ 404.1520(d), 404.1525(a). Plaintiff bears the burden of showing that her impairment "satisfies all of the criteria in the [L]isting" or providing medical findings that "are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1525(d), 404.1526(b); see also Whitehead, 820 F.3d at 781 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). The ALJ bears the responsibility for deciding whether an impairment meets or equals a Listing. 20 C.F.R. §§ 404.1526(e)(3), 404.1527(d).

Listing 1.04 concerns disorders of the spine and states:

1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise

> of a nerve root (including the cauda equina) or the
> spinal cord. With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting and
> supine).

The ALJ assessed whether Plaintiff met this section of Listing 1.04 but found the record lacking evidence of any of the criteria required for presumptive disability. Plaintiff contends that "even a cursory review of the medical records demonstrates the presence of all these requirements."[99] Pointing to the 2005 MRI, Plaintiff contends that Plaintiff was diagnosed with degenerative disc disease with "compromise of the nerve root at the lumbar spine[.]"[100]  Pointing to Dr. Mangapuram's 2014 evaluation, Plaintiff argues that the examination revealed limitation of motion of the spine and positive straight-leg raising.  Plaintiff also contends that the record establishes that Plaintiff suffered "chronic radiating pain and resulting neuropathy."[101]

The court first notes that, although the MRI performed more than three years before Plaintiff's alleged onset did indicate nerve root compromise, neither the March 2008 MRI nor the July 2014 MRI revealed nerve root compromise.  Secondly, Dr. Mangapuram's

---

[99]    Doc. 9, Pl.'s Mot. for Summ. J. p. 5.

[100]    Id.

[101]    Id.

testing did not include both sitting and supine straight-leg raising as evidenced by his notation of only one score on each leg. Listing 1.04 requires positive results in both positions. Finally, even crediting all of Plaintiff's arguments, she fails to meet her burden of showing that her impairment satisfies all of the specified medical criteria as she does not point to any evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.]" <u>See</u> Listing 1.04(A). As Plaintiff must show that her back impairment satisfied *all* of the requirements of Listing 1.04(A) or point to medical findings equivalent to every criterion, Plaintiff has failed to demonstrate that the ALJ erred in finding that Plaintiff's back impairment did not meet Listing 1.04(A).

Moreover, substantial evidence supports the ALJ's conclusion. The only time-relevant MRI did not indicate nerve root compromise, and no medical evidence showed motor loss as demonstrated by muscle weakness and accompanied by sensory or reflex loss.  In fact, Plaintiff reported no muscle weakness, and Dr. Mangapuram found no evidence of back muscle atrophy.

The ALJ did not err in his assessment of Plaintiff's back impairment.  Plaintiff's contentions are not supported by the record, which contained substantial evidence in support of the ALJ's conclusion.

**B.   <u>RFC Determination</u>**

A claimant's RFC is her remaining ability to work despite all of the limitations resulting from her impairment.  <u>See</u> 20 C.F.R. § 404.1545(a).  In reaching a decision on RFC, the ALJ is required to perform a function-by-function assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  <u>Myers v. Apfel</u>, 238 F.3d 617, 620 (5th Cir. 2001)(quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)).  The ultimate responsibility for determining this issue lies with the ALJ.  20 C.F.R. § 404.1527(d)(2); <u>Taylor v. Astrue</u>, 706 F.3d 600, 602-03 (5th Cir. 2012).

The ALJ found Plaintiff capable of a full range of sedentary work, opting to afford more credit to Dr. Mangapuram's opinion of her remaining abilities than the medical consultants who found her capable of a full range of light work.  The ALJ cited medical evidence of conservative back treatment and the record absence of any complaints about side effects from pain medication.  Plaintiff challenges the ALJ's assessment, specifically criticizing the ALJ's findings that Plaintiff exhibited no limitations beyond those recognized by the sedentary level of exertion and that Plaintiff's medication side effects did not pose nonexertional limitations.[102]

---

[102]    Parts of Plaintiff's argument are simply untrue.  For example, Plaintiff argues, "In making her [sic] RFC finding, that ALJ improperly rejected the opinions of Plaintiff's examining physicians and gave more weight to the medical expert, a physician who had never even examined Plaintiff . . . ."  <u>Id.</u> p. 6.  She also argues, "The ALJ incorrectly relied on the opinion of a non-treating state agency medical consultant to determine the claimant's RFC at

The record evidence in support of the ALJ's RFC determination amounts to far more than substantial.  Plaintiff sought treatment for her back impairment only for a few months in 2009.  Treatment was conservative, involving no more than a few weeks of physical therapy and pain medication.  More curiously for someone with an allegedly debilitating back impairment, Plaintiff often failed to mention back pain to other medical providers in the years that followed.  Dr. Mangapuram's examination proved Plaintiff capable of exertion defining the sedentary level.

Although Plaintiff occasionally did mention certain conditions that could be side effects of her pain medication, more often than not, Plaintiff denied such conditions as fatigue, malaise, memory loss, confusion, and lack of concentration.  She never sought adjustments to the medication in an effort to diminish the impact of side effects.  Not until she applied for disability did she consistently complain of drowsiness and occasionally of memory loss and other symptoms.

Plaintiff's own testimony, on its own, provides substantial evidence that she was capable of a full range of sedentary work.

---

'Light.'"  To the contrary on both accounts, the ALJ gave greater weight to the report by Dr. Mangapuram, an examining physician, than to the medical consultants' opinions that Plaintiff could perform a full range of light work.

    Without further explanation, Plaintiff asserts that the ALJ failed to conduct a function-by-function assessment or to consider how her back impairment affected her exertional abilities and RFC.  The court finds this to be inaccurate as well.  The ALJ discussed the medical records concerning her back impairment, her subjective allegations, and her daily activities and assessed Plaintiff's exertional limitations, specifically finding her able to meet each functional requirement for sedentary work.

Although she testified that she could not bend, stoop, or lift anything heavier than ten pounds, she reported being able to prepare meals, walk without an assistive device, walk her dog twice per day, walk up to one-half a mile for exercise, load clothes in the washer and dishes in the top rack of the dishwasher, fold clothes, shop, read, cross stitch, peruse the internet, drive, and attend church.  Plaintiff testified that the back pain was fairly well controlled at a tolerable level and that she was able to keep up with appointments and tasks without problem or confusion even though she did not feel as mentally sharp as in the past.

The ALJ engaged in a proper evaluation of Plaintiff's RFC and that substantial evidence in the record supports of his conclusion.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's cross-motion be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such

objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

    **SIGNED** in Houston, Texas, this 29th day of July, 2019.


                                             Nancy K. Johnson
                                  United States Magistrate Judge